The **SECURITY STATE BANK OF BASIN, a Wyoming banking corporation, Appellant (Plaintiff),**

v.

**Bertha E. NEWTON, Appellee (Defendant).**

**No. 84–277.**

Supreme Court of Wyoming.

Oct. 16, 1985.

Robert A. Gish of Zaring & Gish, Basin, for appellant.

Elmer J. Scott of Scott & Shelledy, P.C., Worland, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

Security State Bank of Basin brought suit against Bertha Newton as guarantor of her husband, Woodrow Newton, who was guarantor upon a loan made by the bank to his son Albert Newton. From a summary judgment in favor of Bertha Newton, the bank appeals.

We affirm.

Appellant raises the following issue:

"Can a guarantee, which is executory, guarantee another guarantee which is also executory?"

Appellee restates the issue as:

"Does the Guaranty Agreement of Appellee guarantee the secondary obligations of Woodrow Newton on Woodrow Newton's guarantee for loans made by the Bank to Woodrow's son, particularly if there was no consideration for her guaranty?"

On May 7, 1979, Bertha Newton signed a guaranty agreement to enable her husband, Woodrow Newton, to obtain a loan from Security State Bank of Basin. The instrument signed by Bertha Newton reads as follows:

"LOAN GUARANTY AGREEMENT"

"For Value Received and *to enable Woodrow Newton of Box 288 Worland, WY., hereinafter designated as 'Debtor,'* to obtain credit, from time to time, of Security State Bank of Basin, we hereby request said Bank to extend to said Debtor such credit as said Bank may deem proper, and we hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity, and at all times thereafter, and also at the time hereinafter provided, *of any and all indebtedness, liabilities and obligations of every nature and kind* of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of One hundred fifty thousand and no/100 Dollars * * *.

\*　　\*　　\*　　\*　　\*　　\*

"The granting of credit from time to time by said Bank to said Debtor in excess of the amount of this guaranty and without notice to the undersigned, is hereby authorized and shall in no way affect or impair this guaranty." (Emphasis added.)

The loan guaranty agreement provides a continuing guarantee for loans made by the bank to Woodrow Newton. It contemplates a future course of dealings between the creditor and the principal debtor and is generally held to guarantee future loans "provided that the particular transactions fall within the * * * course of dealings contemplated by the * * * continuing guaranty." *Fidelity National Bank of South Miami v. Melo*, Fla.App., 366 So.2d 1218, 1221 (1979); 38 Am.Jur.2d Guaranty § 63.

This guaranty agreement is a form agreement written in broad terms to cover all contingencies possible with respect to the loan being made to Woodrow Newton. It was signed by Bertha Newton for that express purpose. In reliance upon the agreement, the bank extended credit to Woodrow Newton making the loan and delivering its proceeds to him. He repaid the amount of the loan in full, and there was no claim that additional loans were ever made by the bank to Woodrow Newton. Thereafter Bertha Newton's guaranty agreement lay dormant in the bank's file until January 4, 1982.

On January 4, 1982, Woodrow Newton signed a guaranty agreement of the same type to enable his son, Albert, to obtain a loan from the bank. Albert failed to repay the loan and the bank brought suit against Woodrow Newton upon his contract of guaranty. The bank obtained judgment against Woodrow Newton upon his confession of judgment. The bank then brought suit against Bertha Newton, contending that the terms of her May 7, 1979 guaranty extended not only to the loan made to her husband, which had been repaid, but also to his guaranty of Albert's debt as well.

Claiming that she signed the guaranty solely to enable her husband to obtain a loan for his well drilling business and that repayment of the loan in full extinguished her obligation under the guaranty, Bertha Newton denied liability and moved for summary judgment. The district court concluded that there was no genuine issue of fact to be determined and that Bertha Newton was entitled to judgment as a matter of law. Accordingly, the court granted summary judgment in favor of Bertha Newton.

■ A guarantor's liability cannot be extended by construction or by implication beyond the express terms of the guaranty. *Farmers State Bank v. Doering*, 80 Ill. App.3d 959, 400 N.E.2d 705 (1980); *Trego WaKeeney State Bank v. Maier*, 214 Kan. 169, 519 P.2d 743 (1974). Unless a given transaction is expressly included within the guaranty, the guarantor is not liable upon the debtor's default. *National Bank of Commerce of Kansas City, Mo. v. Rockefeller*, 174 F. 22 (8th Cir.1909). A guarantor is liable only for the payment of debts expressly guaranteed.

In *Rohn v. Weld County Bank*, 155 Colo. 490, 395 P.2d 1003 (1964), as in this case, a wife signed a guaranty to enable her husband to obtain a loan. The husband in turn guaranteed a loan made by the bank to their son. The court held that the terms of the wife's guaranty did not include the husband's obligations as guarantor of a third party's loan. The court noted that:

> "Simply stated, this is a suit to extend the provisions of [the] guarantee to cover an extraneous instrument to which [the guarantor] was not a party." Id. 395 P.2d at 1005.

Appellant here similarly seeks to extend Bertha Newton's guaranty to cover Albert Newton's debt to the bank which is represented by an instrument to which Bertha Newton was not a party.

■ The agreement in this case does not contain an express promise to guarantee the debt sought to be collected by appellant. It does not mention the contingent liabilities of Woodrow Newton upon the debts of third persons. There was no evidence in the record that the parties intended that the bank might loan money to any myriad of third persons upon the guaranty of Woodrow Newton which would then be secured by the guaranty of Bertha Newton. Nothing in the record suggests that the parties intended a guaranty that would continue forever for the benefit of third parties unknown to appellee. Bertha Newton agreed only to guarantee payment of her husband's debt, not the debts of third

persons for which her husband might be contingently liable. The bank was the scrivener of the guaranty agreement; and it will, therefore, be construed most strongly against the bank. *Busch Development, Inc. v. City of Cheyenne*, Wyo., 645 P.2d 65 (1982); *Goodman v. Kelly*, Wyo., 390 P.2d 244 (1964); 38 Am.Jur.2d Guaranty § 71.

If in this case the loan guaranty agreement was intended to cover the future contingent liabilities of Woodrow Newton, provision for such liabilities should have been stated with precision and clarity rather than in general language. The use of the phrase "any and all indebtedness, liabilities and obligations of every nature and kind" in this loan guaranty agreement does not, under the facts and circumstances of this case, satisfy the requirement of clarity. It is so indefinite as to be subject to either broad or narrow construction. However, in the context of this agreement, it is clear that when the bank titled the document a *loan* agreement and in the body of the document stated, "For Value Received and to enable Woodrow Newton of Box 288 Worland, WY., hereinafter designated as 'Debtor,' to obtain credit," it described the primary indebtedness of Woodrow Newton. Upon similar facts and circumstances it was held in *Trego WaKeeney State Bank v. Maier*, supra, 519 P.2d 743, that this type catchall phrase would be construed to apply only to primary obligations of the debtor and did not extend to his secondary liability. There is an absence of clear language demonstrating the express intent of the parties to this loan guaranty agreement to guarantee the secondary liability of Woodrow Newton, and we cannot rewrite the agreement to provide coverage for this liability.

In *Fannin State Bank v. Grossman*, 30 Ill.App.2d 484, 175 N.E.2d 268, 85 A.L.R.2d 1178 (1961), the guarantor agreed to guarantee payment of any indebtedness extended by the bank, "whether to [the borrower] alone or to him and others * * *." By its terms, the agreement provided for almost unlimited coverage. In contrast to the

guaranty in that case, Bertha Newton agreed to guarantee payment of the loans of only one person—Woodrow Newton, the debtor. Bertha Newton's guaranty specifically limited its coverage to "said Debtor."

Under the rule of ejusdem generis, when a specific term is followed by a more general provision, the meaning of the general provision is restricted so as to be consistent with the specific term. 1 G. Brandt, The Law of Suretyship and Guaranty § 103 (3d ed. 1905); Trego WaKeeney State Bank v. Maier, supra. The specific term "Woodrow Newton * * * hereinafter designated as 'Debtor'" is followed by a general provision describing the obligations of "said Debtor" guaranteed by the agreement. Applying the rule of ejusdem generis, we hold that the general terms, "indebtedness, liabilities and obligations" refer strictly to the loan directly contracted for by the "said Debtor," Woodrow Newton. As the court stated in *National Bank of Commerce of Kansas City, Mo. v. Rockefeller*, supra, 174 F. at 29:

> "The parties to this plain and simple contract never could have reasonably contemplated any liability brought about by [the] circuitous process,"

advanced by appellant.

■ Bertha Newton guaranteed the payment of a loan made by the bank to Woodrow Newton and not the contingent liabilities he might assume for loans made to third parties. There was an absence of clear language in the agreement stating otherwise. We hold, therefore, for all the reasons stated herein that, where it is the intent of the parties to the loan guaranty agreement to secure a loan for the benefit of a particular person, the agreement does not also guarantee secondary liability for the payment of a loan made to a third party not mentioned nor within the contemplation of the parties.

Appellee also raises the question of whether sufficient consideration was given for Bertha Newton's guaranty to support holding her liable for Albert's debts. Having found that the terms of the guaranty do not extend to Woodrow Newton's obligations as guarantor of Albert's loan, we find it unnecessary to address that question.

The judgment of the district court is, therefore, affirmed.

ROONEY, Justice, specially concurring.

I cannot agree that the language in the Loan Guaranty Agreement means anything other than what it says. I cannot find any ambiguity in the language used. The agreement states its purpose with precision and clarity.

In doing so, it precisely and clearly says, as set out in the majority opinion, that the guarantee is for payment of credit extended to Woodrow Newton, the debtor, and not for credit extended some other debtor—even if Woodrow Newton were contingently liable thereon.

I would affirm on this basis.